People v Valcarcel (2018 NY Slip Op 02362)





People v Valcarcel


2018 NY Slip Op 02362


Decided on April 5, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 5, 2018

107161

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
OSCAR VALCARCEL, Also Known as OSCAR FIGUEROA, Appellant.

Calendar Date: February 20, 2018

Before: Egan Jr., J.P., Mulvey, Aarons and Pritzker, JJ.


Sandra M. Colatosti, Albany, for appellant.
P. David Soares, District Attorney, Albany (Vincent Stark of counsel), for respondent.


Aarons, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the Supreme Court (McDonough, J.), rendered October 30, 2014 in Albany County, upon a verdict convicting defendant of the crimes of murder in the first degree (two counts) and murder in the second degree (three counts).
In December 2013, police officers from the City of Albany Police Department, in response to a call from the victim's friend, discovered the victim's body lying in a pool of blood in his apartment. After obtaining an exigent circumstances order, the detectives pinged the victim's cell phone and tracked it to a Dunkin Donuts wherein defendant was the only customer. The detectives eventually spoke with defendant and, after an investigation, defendant was charged with two counts of murder in
the first degree (intentional felony murder) and two counts of murder in the second degree (felony murder) with the underlying felonies being burglary in the second degree and robbery in the third degree. Defendant was also charged with another count of murder in the second degree (intentional murder). Following a jury trial, defendant was convicted as charged and thereafter sentenced by Supreme Court to concurrent prison terms of 25 years to life on each count. Defendant appeals.
Defendant argues that the evidence was not legally sufficient to support any of the felony murder convictions because the People failed to show that he remained unlawfully in the victim's apartment for the purpose of committing a crime therein or that he killed the victim in furtherance of a robbery. For the same reasons, defendant also argues that the verdict with respect to the felony murder charges was against the weight of the evidence. We disagree.
As pertinent here, a person is guilty of murder in the first degree when he or she, "[w]ith intent to cause the death of a another person, causes the death of such person . . . while . . . in the course of committing or attempting to commit and in furtherance of robbery [or] burglary in the . . . second degree" (Penal Law § 125.27 [1] [a] [vii]). A person is guilty of murder in the second degree when "he [or she] commits or attempts to commit robbery [or] burglary . . . and, in the course of and in furtherance of such crime or of immediate flight therefrom, he [or she] . . . causes the death of a person [that was not a participant]" (Penal Law § 125.25 [3]). Burglary in the second degree requires that the People show that defendant "knowingly enter[ed] or remain[ed] unlawfully" in the victim's dwelling with intent to commit a crime therein" (Penal Law § 140.25 [2]). Robbery in the third degree requires that the People demonstrate that defendant "forcibly [stole] property" (Penal Law § 160.05). As relevant here, "[a] person forcibly steals property and commits robbery when, in the course of committing a larceny, he [or she] uses . . . physical force upon another person for the purpose of . . . [p]reventing or overcoming resistance to the taking of the property" (Penal Law § 160.00 [1]).
At trial, the victim's friend testified that when he went to visit the victim, he noticed that the plexiglass pane outside of the victim's apartment was smashed. He further testified that it was not broken the previous night. The friend noticed that the inside vestibule door was ajar and he called 911 to report a possible burglary. A detective with the City of Albany Police Department responded to the victim's apartment and testified that the broken plexiglass was indicative of a forced entry. The detective testified that he went inside the apartment and it was disheveled and furniture was thrown about as though there had been a struggle. The detective then discovered the victim lying face down in a large pool of blood. The victim was unresponsive and the pockets on his shorts had been turned inside out. The victim's cell phone was missing, and another detective testified that it was pinged so that it could be located. The latitude and longitude pings led to a Dunkin Donuts and defendant was the sole person in there. After defendant left the Dunkin Donuts, the detective and his partner followed him and eventually stopped him. The detective testified that defendant admitted that he had the victim's cell phone. Defendant was interviewed at the police station wherein he indicated that he was in possession of some of the victim's property. A detective also testified that blood was on defendant's pants. Defendant was thereafter arrested and the property was inventoried, which included the victim's backpack, Medicare card, Social Security card, clothing, DVDs and other electronic items.
The pathologist who performed an autopsy of the victim stated that the victim did not have defensive wounds and that the victim's injuries suggested that he was held down, pressure was applied to his neck and that he was cut with a sharp instrument. The pathologist concluded that the cause of death was asphyxiation resulting from an assault. A forensic scientist testified that the blood found on defendant's pants matched the victim's DNA. A police officer who collected and reviewed security videos depicting the area by the victim's apartment stated that defendant was the only person to leave and enter the victim's apartment building on the night in question.
Viewing the foregoing evidence in the light most favorable to the People, we conclude that the evidence was legally sufficient to support the convictions of murder in the first degree (counts 1 and 2) and murder in the second degree (counts 3 and 4). Considering the evidence of the broken plexiglass, the security footage demonstrating that defendant was the only person to enter the apartment building during the early morning hours of the day in question, the lack of defensive wounds on the victim, defendant's possession of some of the victim's belongings and the presence of the victim's DNA on defendant's pants, the jury could rationally conclude that defendant unlawfully entered the victim's apartment with the intent to commit a crime therein [*2](see People v Jacobs, 37 AD3d 868, 870 [2007], lv denied 9 NY3d 923 [2007]; People v Fogarty, 12 AD3d 854, 856-857 [2004], lv denied 4 NY3d 763 [2005]; see generally People v Henderson, 25 NY3d 534, 539-540 [2015]). Additionally, defendant recognizes that some evidence at trial suggested that he stole property from the victim, namely that he possessed some of the victim's items and the fact that the victim's pockets were discovered inside out. This evidence, coupled with the pathologist's testimony that the victim was likely held down, cut with a sharp instrument and died of asphyxiation, was legally sufficient for the jury to find that defendant killed the victim in furtherance of a robbery (see People v Chaplin, 134 AD3d 1148, 1151-1152 [2015], lv denied 27 NY3d 1067 [2016]; People v Fogarty, 12 AD3d at 856-857; People v Garrette, 223 AD2d 749, 752 [1996], lv denied 87 NY2d 1019 [1996]).
Although an acquittal would not have been unreasonable, viewing the evidence in a neutral light, we find the proof amply supports the predicate felony charges (see People v Young, 152 AD3d 981, 982 [2017], lv denied 30 NY3d 955 [2017]; People v Novak, 148 AD3d 1352, 1357-1358 [2017], lv denied 29 NY3d 1084 [2017]; People v Thomas, 112 AD3d 999, 1000-1001 [2013], lvs denied 22 NY3d 1139, 1141 [2014]). While defendant testified on his own behalf and provided an alternative account of the incident at issue, the jury apparently rejected his version and we accord deference to the jury's credibility determinations (see People v Favors, 155 AD3d 1081, 1083 [2017]). To the extent that defendant contends that the remaining elements of the crimes of murder in the first degree and murder in the second degree were contrary to the weight of the evidence, such contention is without merit (see People v Chaplin, 134 AD3d at 1152; People v Burnell, 89 AD3d 1118, 1120 [2011], lv denied 18 NY3d 922 [2012]).
Defendant failed to preserve his argument that certain counts in the indictment should have been dismissed as multiplicitous given that such argument was not specifically raised in defendant's pretrial motion to dismiss (see People v Knapp, 138 AD3d 1157, 1157 [2016]; People v Halpin, 261 AD2d 647, 647 [1999], lv denied 93 NY2d 971 [1999]). In any event, the claim is without merit (see People v Kindlon, 217 AD2d 793, 795 [1995], lv denied 86 NY2d 844 [1995]).
Defendant argues that his motion to suppress should have been granted because exigent circumstances did not exist for the warrantless use of pinging to track the victim's cell phone. Defendant, however, did not advance this argument as a ground for suppression and, therefore, it is not preserved for our review (see People v Durrin, 32 AD3d 665, 666 [2006]; People v Barton, 13 AD3d 721, 723 [2004], lv denied 5 NY3d 785 [2005]). Even if preserved, defendant lacked standing to challenge the search inasmuch as he admitted that the cell phone belonged to the victim and not him. Defendant thus had no legitimate expectation of privacy over the victim's cell phone (see People v Ross, 106 AD3d 1194, 1196 [2013], lv denied 22 NY3d 1090 [2014]). Furthermore, the record discloses that exigent circumstances existed to permit the police to ping and track the victim's cell phone without a warrant (see generally People v Knapp, 52 NY2d 689, 695-696 [1981]).
Defendant's contention that Supreme Court's jury instructions as required by CPL 270.40 were inadequate is also unpreserved in the absence of a timely objection thereto (see People v Russell, 155 AD3d 1432, 1432 [2017], lv denied ___ NY3d ___ [Feb. 23, 2018]). In any event, we perceive no error in the court's instructions that would warrant a new trial (see People v LaDuke, 140 AD3d 1467, 1470 [2016]; People v Dashnaw, 37 AD3d 860, 862 [2007], lv denied 8 NY3d 945 [2007]).
Finally, defendant is correct that the convictions for murder in the second degree — [*3]counts 3, 4 and 5 — should be dismissed because they are lesser included offenses of murder in the first degree — counts 1 and 2 — of which he was also convicted (see People v Miller, 6 NY3d 295, 303-304 [2006]; People v Davis, 155 AD3d 1311, 1317 [2017], lv denied ___ NY3d ___ [Feb. 1, 2018]; People v Jeremiah, 147 AD3d 1199, 1206 [2017], lvs denied 29 NY3d 1031, 1033 [2017]). Even though this argument is unpreserved, we exercise our interest of justice jurisdiction and modify the judgment accordingly (see CPL 470.15 [6] [a]).
Egan Jr., J.P., Mulvey and Pritzker, JJ., concur.
ORDERED that the judgment is modified, and as a matter of discretion in the interest of justice, by reversing defendant's convictions of murder in the second degree under counts 3, 4 and 5 of the indictment; said counts dismissed and the sentences imposed thereon vacated; and, as so modified, affirmed.